UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

STEVEN D. PRUITT                                                    PLAINTIFF

VS.                              Civil No. 2:14-cv-02036-MEF

CAROLYN W. COLVIN                                                  DEFENDANT
Commissioner of Social Security Administration

## MEMORANDUM OPINION

Plaintiff, Steven D. Pruitt, brings this action under 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §423(d)(1)(A).   In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. §405(g).

## I.      Procedural Background:

Plaintiff filed his application for DIB on January 7, 2011, alleging an onset date of August 20, 1981, due to head injury, memory loss and paralysis. (T. 53) Plaintiff's application was denied initially and on reconsideration. (T. 2-4, 32-34, 36-38) Plaintiff then requested an administration hearing, which was held on July 24, 2012.  A supplemental hearing was held on December 3, 2012, where a vocational expert testified.

At the time of the hearing, Plaintiff was 59 years of age and graduated from high school. (T. 53) Plaintiff served in the United States Marine Corps from May 22, 1972 to May 31, 1982. (Plaintiff Appeal Brief (Pl.'s Br) Ex. A pg. 1)

On January 17, 2013, the Administrative Law Judge ("ALJ"), Hon. Edward M. Starr, found Plaintiff's organic brain syndrome and shoulder disorder were severe.  Considering the Plaintiff's

age, education, work experience, and the residual functional capacity ("RFC") based upon all of his impairments, the ALJ concluded the Plaintiff was not disabled.  The ALJ determined the Plaintiff could perform light work as defined in 20 C.F.R. §404.1567(b), except the Plaintiff cannot perform overhead work on the non-dominant side.  He is able to understand, remember and carry out simple routine and repetitive tasks.  He can respond to usual work situations and routine work situations and can respond to supervision that is simple, direct and concrete.  He is able to interact with supervisors, co-workers and the public.  With the assistance of a vocational expert, the ALJ concluded that Plaintiff would be capable of making a successful adjustment to work that exists in significant numbers in the national economy. (T. 13-16)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on February 2, 2014. (T. 2-4) Plaintiff then filed this action on February 26, 2014. (Doc. 1) This case is before the undersigned pursuant to the consent of the parties. (Doc. 7) Both parties have filed appeal briefs, and the case is ready for decision. (Doc. 12 and 13)

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Banhart,* 292 F.3d. 576, 583 (8th Cir. 2002). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's decision." *Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000). "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox, v. Asture,* 495 F.3d 617, 617 (8th Cir. 2007). The AJL's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d, 964, 966 (8th Cir. 2003).   The Court considers the evidence that "supports as well as detracts from the

Commissioner's decision, and we will not reverse simply because some evidence may support the opposite conclusion." *Hamilton v. Astrue,* 518 F.3d 607, 610 (8th Cir. 2008). If after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young* at 1068.

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairments, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

If such an impairment exists, the ALJ must determine whether the claimant has demonstrated that he is unable to perform either his past relevant work, or any other work that exists in significant numbers in the national economy. (20 C.F.R. §416.945). The ALJ applies a five-step sequential evaluation process for determining whether an individual is disabled. (20 C.F.R. §404.1520(a)-(f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker,* 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §404.150, 416.920 (2003).

### III.   Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff has not been disabled from the alleged date of onset on

August 20, 1981.  Plaintiff raises two issues on appeal, which can be summarized as: (A) the ALJ did not fully and fairly develop the record; and, (B) the ALJ's RFC determination is inconsistent with the record. (Doc. 12, pp. 6-14) Because of the Court's ruling set forth below on the first point, the second point is not addressed herein.

**Development of the record:**

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made).  The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994).

The medical evidence is as follows.

On August 20, 1981, Plaintiff was involved in a high speed motorcycle accident.  Plaintiff was taken to University Hospital, University of California Medical Center (hereinafter "University Hospital") located in San Diego, California.  Upon arrival, doctor's observed the Plaintiff to be combative, unresponsive, grunting respirations, responsive to deep pain and moving all four extremities.  However, he was not moving his left extremities. (T. 100) X-rays showed fractures to the left distal clavicle and scapula.  A CAT scan showed a small right subdural hematoma and intracerebellar hematoma with a moderate right-to-left shift, however, the neurologist did not find these to be significant enough to warrant surgery. (T. 100A)

4

With regard to the Plaintiff's left arm with possible brachial nerve palsy, EMG studies were deferred until his head injury was cleared for transport to the facility taking the measurement. The day after his admittance the medical records indicate the Plaintiff's left arm enlarging. (T. 101) Surgeons did not perform surgery as later retests returned normal. (T. 102)

Plaintiff's closed head injury and pressure were monitored. His neurological status slowly but steadily improved, and his subarachnoid bolt was removed. (T. 102) Plaintiff was extubated on August 24, 1981. The neurological staff noted the Plaintiff was awake, responsive to command, cooperative, but not oriented to the conditions, other than person. The neurological staff was of the opinion the Plaintiff would continue to improve and awaken, though the full extent of his recovery depended essentially on the Plaintiff's course, which at that time was unknown. (T. 102)

The discharge diagnosis of the Plaintiff included closed head injury, possible left brachial palsy, intimal tears and flaps of the left subclavian and axillary artery, status post exploratory laparotomy on August 20, 1981 with findings of splenic laceration, hepatic lacerations times four and serosal tears times four, possible left maxillary fractures, without X-rays, fractured distal left clavicle, and fractured left scapula. (T. 102) He was discharged on Tobyamycian, Morphine, Mylanta, Alternajel, Dilatin, and Methicillin. (T. 102) Upon discharge on August 25, 1981, he was transferred to the U.S. Naval Regional Medical Center for the remainder of his care. (T. 103)

On October 24, 1984, Dr. James A. Jenkins, with the Western Arkansas Counseling and Guidance Center, wrote a letter detailing his opinion of the Plaintiff. (T. 109). Dr. Jenkins indicated on mental status examination, there was no indication of thought disorder, delusions, hallucinations, etc. However, there was marked memory deficit and marked slowing of responses, not because of resistance, but because of slowed mentation. He did not find the Plaintiff incompetent because of mental illness, however, organically he may suffer from brain damage to

the point his memory was impaired enough that statements may not be compatible with the facts but still true to him. (T. 109)

Plaintiff's medical care and treatment has mostly been provided by the Veterans' Administration (VA).  X-rays of the Plaintiff's left shoulder taken on July 9, 1993, showed old trauma to the scapula near the base of the acromion process and glenoid bone with deformity present. (T. 116-117)

On June 3, 1998 Plaintiff met with Dr. Jesse F. Walker, physician with the VA.  Dr. Walker observed a 45 year old male with a history of a motorcycle accident.  Since the accident Plaintiff suffered from severe pain, often leaving him in tears, at the left upper arm and shoulder.  Plaintiff had some relief with pain medications, Morphine and Codeine in the past.  He had marked atrophy of the deltoids and posterior rotator cuff muscles of the left shoulder.  Marked decreased strength of all muscle groups at the left shoulder and upper arm.  Dr. Walker assessed the Plaintiff with chronic pain due to injury.  He prescribed Morphine and Gabapentin. (T. 207-208)

On July 23, 1999, Plaintiff attended a follow up appointment with Dr. Walker.  Dr. Walker assessed Plaintiff with chronic pain syndrome associated with nerve and musculoskeletal injuries caused by a motorcycle accident, with very good control of pain with Morphine.  Dr. Walker's plan was to stop the Tetracycline and continue with the Morphine.  He was to have a follow up appointment six months later.

According to the medical records, the next time the Plaintiff visited a doctor was on February 6, 2003.  Plaintiff met with Dr. Kipton Garrett, a primary care physician with the VA, to discuss pain management.  Plaintiff's chief complaint was pain associated with the motorcycle injury on August 20, 1981, he also complained of depression.  Due to his pain, he had not been able to hold a job, he sat around the house and watched TV.  Plaintiff attended to his hygiene and drove part of

the time.  While conducting an examination of the Plaintiff, Dr. Garrett observed the Plaintiff was pleasant with somewhat flattened affect, answered questions appropriately, but did not have many facial expressions.  He has obvious muscular atrophy and weakness of his left upper extremity. (T. 195-202)

During his depression screening, Plaintiff reported two consecutive weeks or more, in the past year, during which he felt, sad, blue or depressed, or lost all interest or pleasure in things that he usually cared about, he reported two years or more in life when he felt depressed or sad most days even if he felt ok sometimes.  However he denied suicidal thoughts, and he had been depressed four or more days in the past week. (T. 202)

With regard to his pain, the Plaintiff reported his comfort level of pain a seven on a ten point scale.  The onset of shooting/stabbing pain was approximately twenty years ago, and located in his left shoulder, arm, back and leg.  He has tried several different medications, including marijuana. (T. 203)

Dr. Garrett's impression of the Plaintiff was he had chronic pain associated with both general medical condition and some psychological factors, depression and hypertension.  Dr. Garrett prescribed Docusate and Magnesium Hydroxide for constipation, Fosinopril and Hydrochlorothiazide for blood pressure, Fluoxetine for depression and irritability, Nortriptyline for sleep and pain and Methadone for severe pain with a caution of it may cause drowsiness, do not take and drive. (T. 194, 198, 202-204)

Plaintiff had several yearly follow-up examinations by Dr. Garrett during his pain management contract.  On March 3, 2003, Dr. Garrett assessed him with pain disorder, depression and essential hypertension. He was prescribed Docusate and Magnesium Hydroxide for constipation, Fosinopril and Hydrochlorothiazide for blood pressure, Fluoxetine for depression and irritability,

7

Nortriptyline for sleep and pain and Methadone for pain. The records indicated the Plaintiff tolerated the medicines well, his pain was a zero.  During his depression screening, Plaintiff reported two consecutive weeks or more, in the past year, during which he felt, sad, blue or depressed, or lost all interest or pleasure in things that he usually cared about, and he felt depressed or sad for two years or more in life, even if he felt ok sometimes.  He reported he felt depressed or sad much of the time in the past year, although he has not had suicidal thoughts.  Plaintiff had less than one day of depression in the last week   (T. 191-194)

On November 4, 2003, Dr. Garrett assessed the Plaintiff with pain disorder and essential hypertension. He was prescribed Docusate and Magnesium Hydroxide for constipation, Fosinopril and Hydrochlorothiazide for blood pressure, Fluoxetine for depression and irritability, Nortriptyline for sleep and pain and Methadone for pain. The records indicated the Plaintiff tolerated medicines well, and, he no longer took Fluoxetine as he was no longer depressed since his pain was under control. (T. 181-184)

 On November 2, 2004 Dr. Garrett assessed him with pain disorder and essential hypertension. He was prescribed Docusate and Magnesium Hydroxide for constipation, Dosinopril and Hydrochlorothiazide for blood pressure, Nortriptyline for sleep and pain and Methadone for pain. Plaintiff reported no acute or chronic pain.  The records indicated the Plaintiff was taking and tolerating medications, he was in good spirits and the pain was controlled on Methadone. Plaintiff's posttraumatic stress disorder (PTSD) screening came back negative. (T. 164-170)

March 29, 2005, Plaintiff contacted Dr. Garrett to inform him the 5mg of Methadone was not working and he would like to increase the dosage amount. Dr. Garret increased the dosage to 5mg three times a day on the Plaintiff's next renewal. (T. 160)

On October 31, 2005, Dr. Garrett assessed the Plaintiff with pain disorder associated with both psychological factors and a general medical condition, and had essential hypertension.  He prescribed Docusate and Magnesium Hydroxide for constipation, Felodipine, Fosinopril and Hydrochlorothiazide for blood pressure, Nortriptyline for sleep and pain and Methadone for pain. The records noted the patient was doing well, pain was controlled with methadone, he tolerated blood pressure medicine and his weight loss had been intentional.  He tested positive for marijuana, Dr. Garrett told him if he tested positive again, methadone will be discontinued. Plaintiff's PTSD screening came back negative. (T. 147-148)

On September 11, 2006, Plaintiff contacted the VA and indicated he wanted to stop his pain medication, Methadone.

The ALJ based his decision on the medical records submitted by the Plaintiff.  Except for the medical records from University Hospital, the records submitted are all after the date last insured. According to the transcript of the hearing that took place on July 24, 2012, Plaintiff's attorney attempted to obtain the medical records for the time period after he was discharged from University Hospital, however, the Veteran's Administration (VA) sent a Freedom of Information Act (FOIA) response. (T. 216).  While discussing the records, the ALJ stated he "will try to get those myself." (T. 216)

At the end of the hearing the ALJ stated, "I don't have any additional questions right now.  I may have some more later.  But without having much more information I don't know what else I can do." He further stated, "I'll see what I can do about getting additional VA records."  "It looks like Social Security tried to get them earlier and was not successful, but I'll work on that.  Once I get all these things I'll send copies to you all, show you what I have, then we'll kind of regroup

and see where we are.  There's not a whole lot else I can do right now except try to get this additional evidence." (T. 224-225)

In the Courts opinion, there was not sufficient evidence for the ALJ to make an informed decision.  The ALJ has not developed the record fully as to the Plaintiff's mental and physical limitations, particularly with regard to the Plaintiff's left arm.  At the hearing on July 24, 2012, the ALJ stated "I will try to get those myself," referring to the medical records at the U.S. Naval Regional Medical Center. (T. 216). The Court has examined the record, but was unable to locate the records after the Plaintiff was discharged from University Hospital and admitted to the U.S. Naval Regional Medical Center.  Under 20 C.F.R. § 404-1512(d), the ALJ will make every reasonable effort to help the Plaintiff get medical reports.  There is no indication from the record of the attempts made by the ALJ to obtain those records.  And, the undersigned finds that remand is necessary to allow the ALJ to further develop the record.

On remand, the ALJ is directed to attempt to obtain the medical records of the Plaintiff for the time period in question.  If the medical records cannot be obtained, then the ALJ is to order a consultative orthopedic and neurological examination, complete with an RFC assessment that details the Plaintiff's mobility of the left side of his arm as well as the organic brain injury, and determine, to the best of the doctor's ability, when the problems associated with the organic brain syndrome and shoulder disorder started.  The ALJ is also directed to submit the medical records available to the examiner in order to aid in the assessment.

On remand the ALJ should also consider Exhibit A of Plaintiff's Appeal Brief when assessing the Plaintiff's RFC.  While the Court understands this was not submitted as evidence, it shows an examination closer to the Plaintiff's date of injury and last date of insured.

## IV.   <u>Conclusion:</u>

Based on the foregoing, we reverse the decision of the ALJ and remand this case to the

Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g).

Dated this 23rd day of February, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE